F. M. RAWLINGS v. LIZZIE NEAL.

(Decided April 3, 1900.)

*Claim and Delivery—Lien by Husband on Wife's Crops—*
*Charge Upon Separate Estate by Wife Under The Code,*
*Section 1826—Remedy of Creditor—Her Right to Ex-*
*emptions—Defendant's Judgment in Claim and Deliv-*
*ery.*

1. *Claim and Delivery* will not lie for crops produced on wife's land, under a crop lien given by husband without her consent.

2. If a married woman by virtue of sec. 1826 of The Code, charges her separate personal estate for her necessary expenses or the support of her family, the creditor can not seize the property, but must reduce his debt to judgment, which can be enforced, subject to her rights of exemption.

3. All fraud apart on her side, an unauthorized lien given by husband on wife's crops can not be enforced.

4. The seizure of her crop by claim and delivery under such lien is wrongful, and she is entitled to judgment for their return, or to the value thereof, undiminished by claim for debt due the plaintiff—otherwise, her right to her personal property exemption might be impaired. Her judgment carries all costs.

CIVIL ACTION for personal property, with auxiliary remedy of claim and delivery, tried before *Moore, J.,* at May Term, 1899, of NASH Superior Court.

Same case reported in 122 N. C., 173.

The plaintiff claimed the crops under a lien made by the deceased husband of defendant to secure account for goods furnished the family. The defendant claimed the crop because made on her land, and mortgaged without her consent.

The following issues were submitted:

(1) Was the plaintiff at the commencement of this action the owner, and entitled to the possession of the crops in controversy?

RAWLINGS *v.* NEAL.

(2) What was the value of the same at the time of the seizure thereof by the sheriff?

(3) Is the defendant indebted to the plaintiff; and if so, in what sum?

The jury, under instructions, answered the first issue, "No."

Their answer to the second issue was "$132.28," and to the third issue, "$101.89."

Upon the verdict, the plaintiff contended that the amount of defendant's debt, $101.89, should be subtracted from the value of the property seized, $132.28, leaving $30.39, and defendant should only recover $30.39.

The defendant contended that she was entitled to recover the value of property seized, $132.28, and costs of suit, undiminished by any debt due plaintiff.

The amount of defendant's debt due plaintiff incurred after her husband's death was admitted to be $42.27. His Honor deducted $42.27 from the value of crops seized, $132.28, leaving $90.01, and rendered judgment in favor of defendant for this balance, $90.01, together with half costs.

Both parties excepted and appealed.

*Messrs. F. S. Spruill,* and *B. H. Bunn,* for plaintiff.
*Messrs. Jacob Battle,* and *Shepherd & Busbee,* for defendant.

## PLAINTIFF'S APPEAL.

MONTGOMERY, J. This action was originally begun for the recovery of personal property, including certain crops which had been grown on the land of the defendant. The ancillary remedy for its claim and delivery to the plaintiff was resorted to at the time when the summons was issued. The plaintiff based his claim upon a crop lien executed by the

husband, the wife not having joined in the conveyance with him. The evidence on the first trial was that the husband died, and that the crop was made entirely by the widow and her two children on her own land, and this Court held upon the appeal of the defendant that the mortgage was void as to the wife's property because she had not joined in its execution, and a new trial was ordered. The plaintiff, by leave of the Court below, amended his complaint, and in it declared substantially upon three causes of action: First, that he contracted to sell and deliver to the defendant, and did deliver to her, the articles of merchandise mentioned in the complaint, and that they were necessary for the support and maintenance of herself and her family, and that she had no other means of support, her husband being unable to furnish the same; second, that she had authorized and empowered her husband to execute a crop lien to secure the amount of goods so sold and delivered to her, and that he did under that authority execute the crop lien; and third, that if she had not originally authorized the execution of the lien, she did, after the death of her husband, expressly ratify and confirm the action of her husband by continuing to buy goods necessary for her support, and promising to pay the debt. The defendant filed no demurrer to the amended complaint for misjoinder of causes of action, but in her answer admitted that the plaintiff had seized the crop, that the land was her own, and that her husband had died, but she denied all the other allegations of the complaint. The evidence was that the widow and children made the crop.

The plaintiff certainly was not entitled to the possession of the crop under the contract which he alleges he made with the defendant in selling and delivering to her goods necessary for the support of her family. Under sec. 1826 of The

Code, a married woman is empowered to make an agreement by which she can charge her separate personal estate for her necessary personal expenses or the support of her family without the written consent of her husband. But when such an agreement is made by the wife, the creditor is not allowed to take possession of her personal property to satisfy the charge upon it. He can only proceed through the courts, obtain his judgment and issue his execution. The judgment is a charge only on her separate estate, and she is entitled to her exemptions. Nor is the plaintiff entitled to the crop by virtue of the crop lien. It was an attempt by the husband to convey the wife's personal property without the joining in the execution of the instrument by herself. This Court said in this case, reported in 122 N. C., 173: "But the defendant at the date of the mortgage was a *feme* covert, and would not have been bound if she alone had made it. And certainly she could not be bound by her husbands' mortgage because she did not object to his making it, or by assenting verbally to her husband's making it." The allegation of the complaint to the effect that the husband executed the lien as the agent of the wife, and under her authority, and at her request, even if a verbal agency would be sufficient, is not supported by the evidence. The plaintiff himself testified that for five years before the execution of the last mortgage the husband had been executing liens on the crops, that the wife never had joined in the execution of any of them, and had never been asked to do so, as he thought the land was the husband's all the time, and also when the last one was executed. He further testified: "I made contract with Neal. He did not mention his wife. I extended credit to Neal. Contract made with Neal, and not with him as agent. Things were charged on books to J. D. Neal." So it is clear from the evidence of the plaintiff himself that he was dealing with the

husband, and that the husband was the agent of his wife was not in the mind of either one of them.

But it is contended by the plaintiff that, even if she had not originally authorized the execution of the lien, the defendant, after she became discovert, ratified the act of her husband as her own.    There can be no ratification of a void transaction. So far as the defendant was concerned, the execution of the lien by her husband was a void act, for it undertook, as we have seen, to convey her property, she not joining in the conveyance; and she also set up that defense in her answer. And there can be no ratification where the act is done by a person not professedly acting as the agent of the person sought to be charged as principal.    Am. and Eng. Enc. of Law, p. 1187, and cases there cited.

As we have seen, there was no proof that the husband acted as the agent of the wife in the matter, but on the contrary the whole evidence, including that of the plaintiff, was, that the husband was acting for himself, and not as his wife's agent.    Neither was there any allegation in the complaint that at the time of the execution of the mortgage by the husband, or before, that the wife perpetrated any fraud on the plaintiff in the transaction, or that she was guilty of any act fraudulent in its character which misled the plaintiff to his injury, and by which she would be estopped to claim the property described in the lien.    There was no fraud on her part, and it is clear from the evidence that while it might have been as the plaintiff said that he was influenced to go into the arrangement by the representations made by the defendant, in respect to the condition of herself and her husband, yet he was not misled by those representations, for he had been dealing in the same way with the defendant for five successive years, and taking from him just such mortgages.    In fact,

as the plaintiff said, he thought the husband owned the land all the time.

The special instructions prayed for by the plaintiff contravened the law as we have declared it in this discussion of the case, and were properly refused. The instruction of his Honor that the jury should answer in the negative the first issue, "Was the plaintiff at the commencement of this action the owner, and entitled to the possession of the crops in controversy?" was, therefore, also correct, although a part of the reason assigned might not have been the true reason. There was a "broad-side" exception to the charge, but the same question, which the plaintiff wished to raise, comes up for consideration upon the plaintiff's exception to the overruling of his motion for judgment, as well as upon the exception to the judgment itself.

The second issue was in these words, "What was the value of the same (crop) at the time of the seizure thereof by the sheriff?" and the third issue was, "Is the defendant indebted to the plaintiff, and if so, in what sum?" The jury responded to the second issue "$132.28," and to the third issue "$101.89." The plaintiff moved that judgment be rendered for the defendant for the sum of $30.39, that amount being the difference between the sum found by the jury to be due to him by the plaintiff, and the value of the articles as found by the jury which the plaintiff had converted. We think there was no error in the ruling of his Honor refusing the motion. If the plaintiff's action had been simply for the recovery of money and the defendant had set up a counterclaim in debt, then if the plaintiff's recovery was greater than that of the defendant, judgment for the difference would have been the proper judgment, and *vice versa*. But this is not such a suit. The plaintiff unlawfully and wrongfully seized the personal property of the defendant, and if it had

been in his possession the judgment would have been for its return or for its value in money to the plaintiff.

The defendant had not parted with her property by mortgage or pledge. It was wrongfully taken from her by the plaintiff, and if it could be found it would be her property still, and it could not be applied to the debt which the jury had found due to the plaintiff by the defendant, for that would have defeated the right of the defendant to claim her personal property exemption therein. Certainly a sale by the plaintiff of the crop does not alter the rule. A plaintiff, who in the same complaint joins a cause of action for the recovery of personal property, and one for debt (no demurrer was filed to the complaint for misjoinder), will not be allowed upon the recovery of a judgment for debt against the defendant to have the judgment satisfied by the application of the proceeds of a sale of the property of the defendant, which he has taken into his possession unlawfully. That would be a means of defeating the personal exemption of the debtor, which the law would not tolerate.

The findings of the jury and the admissions of the parties were incorporated in the judgment, and it was adjudged that the defendant recover of the plaintiff and his sureties on his claim and delivery undertaking the sum of $90.01, the difference between the debt contracted by the defendant with the plaintiff after the death of her husband, and the amount of $132.28, due by the plaintiff to the defendant, with interest from November 13, 1896, until paid, and that the costs of the action be paid in equal parts between the plaintiff and defendant. There is error in this part of the judgment, and the same must be reformed. The defendant is entitled to judgment against the plaintiff and the sureties on his claim and delivery bond for the whole amount of the value of the crop sold by him, to-wit, $132.28, and for the costs.

This action was brought originally for the recovery of personal property, and that continued to be its main purpose. Code, sec. 525, sub-sec. 2, and sec. 526.

Modified and affirmed.

## DEFENDANT'S APPEAL IN SAME CASE.

MONTGOMERY, J.    The defendant excepted to the ruling of his Honor that the amount of the purchases made by the defendant from the plaintiff after the husband's death ($42.27) should be deducted from the amount found by the jury to be the value of the crop seized by the plaintiff, and she also excepted to that part of the judgment by which she was taxed one-half of the costs of the action.

For the reasons we have given in considering the plaintiff's appeal, the defendant's exceptions should have been sustained, and the judgment must be modified and reformed in the court below so as to give to the defendant $132.28, the value of the crop seized by the plaintiff, and also her costs of action. There was error in the particulars we have pointed out, but a new trial is not necessary as the judgment can be modified and reformed as above mentioned to fit the finding of the issues by the jury.

Modified and affirmed.